## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

---

Britto Central, Inc.,                                    Civil Action, File No.:

       Plaintiff,

v.

Craig Redman, Karl Maier,
Karl Maier, Ltd., and
Apple, Inc.,

       Defendants.

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
## AND DEMAND FOR TRIAL BY JURY

---

Plaintiff, BRITTO CENTRAL, INC. ("Britto Central" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, CRAIG REDMAN ("Redman"), KARL MAIER ("Maier"), and KARL MAIER, LTD. (collectively "Craig & Karl" or the "Craig & Karl Defendants"), and APPLE, INC. ("Apple"), and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for trade dress infringement, unfair competition and false designation of origin or sponsorship/endorsement under the Lanham Act, 15 U.S.C. § 1125(a); trade dress dilution under the Lanham Act, 15 U.S.C. § 1125(c); trade dress infringement, trade dress dilution, unfair competition, and deceptive and unfair trade practices under Florida law; and copyright infringement under the U.S. Copyright Act, 17 U.S.C. §§ 106 and 501, arising from Defendants' blatant and repeated unauthorized use of the artwork of world-famous visual artist, Romero Britto, in their products, stores, marketing, and promotion. Mr. Britto is beloved throughout the world and his unique and colorful fine art works are sold and exhibited (and have been sold and exhibited for decades) in hundreds of galleries and museums across the globe.

Additionally, Mr. Britto uses and authorizes the use of his images for projects and merchandise of all sorts, from whimsical items like giftware and clothing, to charitable campaigns, to strategic and innovative brand extensions and partnerships.

## THE PARTIES

2.      Plaintiff, Britto Central, is Mr. Britto's company and the owner of all intellectual property relating to Mr. Britto.  Britto Central is the owner of all of Mr. Britto's images (the "Copyrighted Images"), as well as a series of unique registered and unregistered trademarks and distinctive trade dress to identify the BRITTO™ brand's expansive line of goods and services to consumers (the "Britto Trademarks" and the "Britto Trade Dress," respectively).

3.      Defendant Redman is an individual who resides in New York State. Redman is one half of the graphic design duo professionally known as "Craig & Karl."

4.      Defendant Maier is an individual who resides in London, England.  Maier is the other half of Craig & Karl.

5.      Defendant Karl Maier, Ltd. is a limited liability company registered in England and Wales under registration no. 08290355, and is located in London, England.

6.      Upon information and belief, the Craig & Karl Defendants regularly transact business in this District and in the State Florida, including but not limited to:

- A collaboration with Colorado-based designer Kidrobot, in designing menswear for Kidrobot's summer collection, sold in retail stores and online. The Craig & Karl Defendants held a launch party for the collection, which took place on or around August 9, 2013, in Miami Beach, Florida.

- The Craig & Karl Defendants also teamed up with MCM Worldwide ("MCM"), a German-based company specializing in fine quality leather, for

2

MCM's Eyes on the Horizon Collection and Beyond Snowdome collection, sold in MCM stores around the world and in department stores like Bloomingdale's and NeimanMarcus. Harper's BAZAAR celebrated the launch of the Beyond Snowdome Collection at Soho Beach House in Miami Beach, on or about December 4, 2013.

- The Craig & Karl Defendants have also collaborated with Nike, Inc. ("Nike") and Kiehl's Since 1851, LLC ("Kiehl's") in designing products and packaging which are sold in Florida.

7.      Defendant Apple is a California corporation that designs and sells consumer computer and mobile goods online and through Apple retail stores, including multiple locations in Florida.  Apple regularly transacts business in this District and in the State Florida, is a registered foreign corporation with the Secretary of State for the State of Florida, and maintains an agent for service of process in the State of Florida.

## JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) in that the claims are so related to the federal claims that they form part of the same case or controversy.

9.      Defendants are subject to the personal jurisdiction of the Court because they transact business in, have agents in, or are otherwise found to have purposefully availed themselves of the privilege of doing business in Florida.

10.     Venue is properly founded in this District pursuant to 28 U.S.C. § 1391(b) and (c) and/or 28 U.S.C. § 1400(a) because the Craig & Karl Defendants and Apple are subject to personal jurisdiction within this judicial district, a substantial part of the events or omissions giving rise to the claims occurred within this jurisdiction occurred in this District, and/or because Defendants have committed acts of infringement in this District in that, *inter alia*, the Infringing Apple Image was prominently displayed at Apple's Lincoln Road Apple retail store, less than one block away from Plaintiff's 8,000-square-foot Britto Central gallery and retail store.

## FACTS

### *The Britto Story*

11.     Born in 1963, Romero Britto is the youngest of eight children born to a family of very modest means in the Pernambuco region of Brazil.  Mr. Britto immigrated to Miami from Brazil with the dream of bringing his art to the world. Initially, Mr. Britto sold his works in the streets of Miami, until he was able to open his first small gallery in or around 1987.

12.     In or around 1993, Mr. Britto moved his gallery, named Britto Central, to an 8,000-square-foot space on Miami Beach's celebrated Lincoln Road, a pedestrian-only shopping thoroughfare. Listed on the National Register of Historic Places, Lincoln Road attracts over 3 million visitors annually – approximately 40% of the total number of visitors to Miami Beach every year.   Apple has an Apple retail store on Lincoln Road less than a block away from Plaintiff's gallery/concept store.  Apple's store opened on Lincoln Road in or around 2008.

13.     Today, Mr. Britto is beloved throughout the world and his unique and colorful fine art works are sold and exhibited in hundreds of galleries and museums across the globe. His murals and sculptures can be found in public places globally, including but not limited to airports in New York City, Moscow, and Bogota; Columbus Circle in Manhattan; and multiple children's

4

hospitals. In Miami, many public spaces features a Britto sculpture or image. Mr. Britto was invited to be a panelist at the World Economic Forum in Davos, Switzerland, was the creator of the Cirque du Soleil pre-show at the National Football League's Superbowl XLI in or around 2007, has designed several series of postage stamps for the United Nations Postal Administration, and was the first artist to display a monumental sculpture in London's Hyde Park, a 45-foot pyramid. In or around January 2015, Mr. Britto and his art studio were featured in an extended segment on the internationally broadcast Miss Universe pageant, where finalists from 90 countries around the world joined Mr. Britto in creating a large scale art mural on a wall in downtown Miami.

14.     Furthermore, thanks to a carefully executed licensing program, Mr. Britto brings the aesthetics of his fine art to people of all walks of life, not just those who can afford his original pieces and limited editions. One of Mr. Britto's famous mottos is that "Art is for everyone." From the most humble of beginnings, the BRITTO brand has mushroomed into a bona fide worldwide phenomenon and highly coveted lifestyle brand. On knowledge and belief, no other living fine artist has the degree of consumer market penetration and recognition that Mr. Britto and the BRITTO brand have achieved.

### The BRITTO® Brand

15.     Mr. Britto is much more than a mere visual artist. His distinctive and iconic imagery has evolved into a bona fide lifestyle brand of immense value (the "BRITTO® Brand").

16.     Businesses of all sorts pay Britto Central licensing fees to use BRITTO® images and trade dress, allowing a product or organization to tap into what has become goodwill of incalculable value.

17.     Britto Central's licensing program includes over 50 merchandise licensees

worldwide for items such as clothing, fashion accessories, giftware, handbags, luggage, smartphone and tablet accessories, small appliances, and tableware, to name just a few product categories. Authorized partners include companies such as Kimberly-Clark Corporation; Mattel, Inc.; Hublot, SA; TechnoMarine, S.A.; Lane Bryant, Inc.; Disney; SanDisk Corporation; and Coca-Cola.

18.    The following images reflect but a small representative sample of Britto Central's numerous merchandise licensing projects:



19.    In addition to licensing for merchandise, the BRITTO Brand is also a valuable property that is highly sought after for strategic and innovative brand extensions, partnerships and promotions.  In other words, the BRITTO® artwork and trade dress may not appear on a specific product, *per se*, but rather is used for such things as promotional materials and event materials.

An example is Mr. Britto's collaboration with Korean electronics company LG Corporation ("LG"), where LG licensed Plaintiff's intellectual property to employ animated sequences to play on LG television sets at stores and trade shows.

20.     Plaintiff regularly works with world-class organizations of all kinds to incorporate BRITTO® artwork and trade dress into a wide variety of projects.  Many of these special projects are for charitable causes, and Mr. Britto is famous for his philanthropy, often donating his valuable time and images.  On the other hand, many of these special projects are commercial partnerships, and the mere use of Mr. Britto's artwork for one promotional campaign for consumer goods or services can easily command over six figures as a licensing fee. Such promotional licensing constitutes a significant part of Plaintiff's business.

### The BRITTO® Trade Dress

21.     Plaintiff owns many registered and common law trademarks in the U.S. and abroad to identify its goods and services.  Due to its extensive use, Mr. Britto's distinctive style of artwork has become so famous and pervasive as to constitute a distinctive trade dress that identifies the highly-coveted BRITTO® lifestyle brand.  When consumers see the BRITTO® brand's distinctive indicia, they immediately identify Plaintiff as the source of the product, promotion, or service in question.  Upon seeing the distinctive artwork and Britto Trade Dress, the consumer relies that the product, whatever it may be, is licensed by Britto Central and features authentic images by the artist Romero Britto, himself.

22.     Indeed, the notion that there are so many BRITTO® products as to constitute a broad lifestyle brand was brought vividly to life recently in a commercial produced by the Florida State Lottery.  In 2014, BRITTO® artwork and trade dress was licensed to the Florida State Lottery for use on its lottery tickets.  To promote the tickets, the Florida State Lottery produced a

commercial of a young couple living in "Britto World," where everything they owned was covered in the distinctive artwork of Romero Britto.[1]




23.     The overall Britto Trade Dress is composed of a specific combination of elements that are used in BRITTO® products, promotional materials, and packaging—vibrant color combinations, often dominated by bright yellow; compositions constructed by the juxtaposition of randomly shaped swaths of recurring distinctive patterns (including polka dots and stripes) to form the subject matter of the image, with each compositional element all outlined in bold black strokes; and uplifting, bright and happy visual themes.  This specific combination of visual elements when taken in its entirety creates a distinctive overall visual impression that is uniquely "BRITTO," and serves as a source identifier for Plaintiff's products, promotions and services.

24.     The Britto Trade Dress is strong, fanciful, non-functional, and inherently distinctive.  In addition, the Britto Trade Dress has acquired distinctiveness as a result of the uninterrupted promotion and sale of BRITTO® Brand products and services. Accordingly, the Britto Trade Dress has acquired secondary meaning and is well known to many different groups of relevant consumers to indicate Plaintiff as the source of the goods and services identified by the Britto Trade Dress. The Britto Trade Dress is famous, and it is protected by the Lanham Act.

25.     In addition to Plaintiff's gallery/concept store on Lincoln Road, BRITTO® lifestyle

---

[1] The commercial is available for viewing at https://youtu.be/NUI3cLKVqFM (last checked Apr. 2, 2015).

brand products also support a stand-alone 1,400-square-foot retail store in Miami International Airport named "BRITTO" (open since in or around 2009), as well as three BRITTO stores on three different Royal Caribbean Cruise Line ships based in the U.S., that are dedicated to selling only BRITTO® lifestyle brand products (open since in or around 2010).  Plaintiff regularly receives inquiries within Florida and from all over the world from parties who are interested in opening their own BRITTO stores.  All of these retail storefronts, as well as Plaintiff's online store, use the Britto Trade Dress.

26.     In order to maintain the quality and consistency of the products and projects associated with the BRITTO® lifestyle brand, Britto Central (through its licensing company, Art 800, LLC) maintains strict quality and aesthetic control over all its licensees.  This includes compliance with a BRITTO® style guide.

27.     Mr. Britto has created tens of thousands of images.  Mr. Britto's unique, signature style is instantly recognizable. Representative examples of Mr. Britto's most iconic works are the following:

 



28.     Mr. Britto regularly collaborates with world-class organizations such as The Walt Disney Company ("Disney"), the Fédération Internationale de Football Association (FIFA) (organizer of the World Cup), and The Coca-Cola Company ("Coca-Cola"):

  

29.     Mr. Britto is also famous for his dozens of portraits, many of celebrities, that he creates in his highly distinctive style:

  

***Defendants' Wrongful Acts***

30.    Defendants Redman and Maier are a graphic design duo.  Upon knowledge and belief, as art students, and later as professional artists, Redman and Maier were exposed to and are familiar with Romero Britto's famous body of work.

31.    Upon knowledge and belief, the Craig & Karl Defendants are systematically producing, and in many cases offering for sale and/or license, infringing copies of Mr. Britto's artwork. Craig & Karl have employed copycat images of Britto's works in lucrative licensing deals for merchandise and promotions with companies such as Nike; The Gap, Inc.; Kiehl's; and Apple.

32.    Upon knowledge and belief, Craig & Karl found that the more their images resembled Romero Britto's, the more successful they became in their business endeavors. There is a traceable shift in Craig & Karl's body of work where it can be observed that conscious decisions were made to leave behind other styles of work and focus primarily on creating Romero Britto knockoffs.

33.    A comparison of certain of Craig & Karl's unauthorized appropriations of Mr. Britto's authentic artwork is as follows:

11

| BRITTO | CRAIG & KARL |
|---|---|
|  |  |
| BRITTO | CRAIG & KARL |



| BRITTO | CRAIG & KARL |
|---|---|



| BRITTO | CRAIG & KARL |
|---|---|
|  |  |
| BRITTO | CRAIG & KARL |
|  |  |
| BRITTO | CRAIG & KARL |
|  |  |
| BRITTO | CRAIG & KARL |
| | |



| BRITTO | CRAIG & KARL |
|---|---|
| BRITTO | CRAIG & KARL |
| BRITTO | CRAIG & KARL |



33.     Plaintiff became aware of the existence of Craig & Karl in or around the beginning

of 2015, when Apple, in collaboration with Craig & Karl, launched its worldwide "Start

Something New" promotional campaign.   The centerpiece of Apple's Start Something New

campaign was an image created by Craig & Karl clearly copying the artwork of Romero Britto

(the "Infringing Apple Image"):



34.    The Infringing Apple Image was featured prominently on the splash landing page

of the www.apple.com website, as well as in huge scale display in dozens of Apple retail stores

worldwide:




35.    As with any Apple campaign, the Start Something New Campaign had massive

exposure and breathless press coverage, and many of the media profiles prominently featured the

Infringing Apple Image. Plaintiff was inundated with reports of the Start Something New

campaign and the Infringing Apple Image.  These reports ranged from, for example, incorrect

congratulations on Mr. Britto's new deal with Apple, to consternation from business partners in

potentially collaborative or competing product categories, to inquiries from collectors wanting to

know if the image they saw in the Apple store or on the Apple website was by Romero Britto.

36.    Upon investigation, Plaintiff discovered that the Infringing Apple Image was by

17

Craig & Karl, and that it was not an isolated incident. Redman and Maier have systematically been using Romero Britto artwork to obtain jobs and advance their own careers by illegally trading upon the consumer affection and immeasurable goodwill built by Mr. Britto's decades of tireless work, promotion, and investment, all the while causing damages and irreparable harm to Plaintiff.

37.     As mentioned above, Plaintiff first learned of Craig & Karl when Apple launched the Start Something New campaign in or around January 2015.  The Start Something New campaign infringes and dilutes Plaintiff's famous and distinctive trade dress.

38.     Plaintiff immediately notified Craig & Karl and Apple to cease and desist from the unauthorized use and to remove all unauthorized images.  Defendants declined to comply.

39.     Plaintiff's investigation has revealed that Craig & Karl regularly and systematically infringe certain of Plaintiff's Copyrighted Images and the Britto Trade Dress in their graphic design business, in violation of federal and Florida law.

40.     Each of the Defendants acted as an agent for each of the other Defendants in doing the acts or omissions alleged in this Complaint, and each Defendant ratified and otherwise adopted the acts and statements of the other Defendants and was at all times acting within the course and scope of such agency with the knowledge and approval of each of the other Defendants so as to make them directly and vicariously liable to Plaintiff for the conduct complained of herein, to the extent relevant.

41.     All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

## LEGAL CAUSES OF ACTION

### COUNT I
### TRADE DRESS INFRINGEMENT, FALSE DESIGNATION
### OF ORIGIN OR SPONSORSHIP/ENDORSEMENT,
### AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
### (Against All Defendants)

42.     Plaintiff restates and realleges the previous paragraphs as if fully stated herein.

43.     The Britto Trade Dress is used to identify, among many other things, products in the computer and mobile phone accessory category, and services in the retail store category.

44.     Craig & Karl have been illegally misappropriating the Britto Trade Dress and using it to obtain jobs and advance their own careers by illegally trading upon the consumer affection and immeasurable goodwill built by Mr. Britto's decades of tireless work, promotion, and investment.  The misappropriation then continues to suffuse whatever the subsequent project may be, causing Plaintiff damages and irreparable harm on multiple market levels.

45.     Additionally, the Start Something New campaign was used by Defendants to advertise and promote products in the computer and mobile phone accessory category, and services in the retail store category.  The Start Something New campaign misappropriates the protectable Britto Trade Dress.

46.     Defendants' unauthorized use of the Britto Trade Dress in the Start Something New campaign creates the false and deceptive commercial impression that the Start Something New campaign, and all products and services that the Start Something New campaign promotes, are associated with, endorsed by, or sponsored by Plaintiff. The Start Something New campaign has caused actual consumer confusion for Plaintiff's consumers at both the business-to-business and retail level.

47.     Defendants' unauthorized use of the Britto Trade Dress has wrongfully

appropriated business and goodwill value that rightfully belongs to Plaintiff and that Plaintiff has invested time, money, and energy in developing. This conduct is in violation of 15 U.S.C. § 1125(a).

48.     Plaintiff has been damaged and continues to suffer damages and irreparable harm by the misappropriation and infringement described above in many ways, including but not limited to diversion of prestigious deals, lost licensing revenue, actual consumer confusion, and significant harm to reputation and goodwill, all in amounts not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this Court.

49.     Such conduct of Defendants has been willful, wanton, reckless, and with full knowledge of Plaintiff's rights. Plaintiff is entitled to attorney's fees and punitive damages. Defendants will continue such willful and intentional conduct unless enjoined by this Court.

**COUNT II**
**TRADE DRESS DILUTION UNDER 15 U.S.C. § 1125(c)**
**(Against All Defendants)**

49.     Plaintiff restates and realleges the previous paragraphs as if fully stated herein.

50.     The Britto Trade Dress is used to identify, among many other things, products in the computer and mobile phone accessory category, and services in the retail store category.

51.     Craig & Karl have been illegally misappropriating the Britto Trade Dress and using it to obtain jobs and advance their own careers by illegally trading upon the consumer affection and immeasurable goodwill built by Mr. Britto's decades of tireless work, promotion, and investment.  The misappropriation then continues to suffuse whatever the subsequent project may be, causing Plaintiff damages and irreparable harm on multiple market levels.

52.     Additionally, the Start Something New campaign was used to advertise and promote products in the computer and mobile phone accessory category, and services in the retail

store category.  The Start Something New campaign misappropriates the protectable Britto Trade Dress.

53.     As explained above, Plaintiff's distinctive trade dress is famous.  Defendants' unauthorized use of the Britto Trade Dress in the Start Something New campaign has caused and will cause dilution of the distinctive quality of the Britto Trade Dress, and therefore constitutes a trade dress dilution under the Lanham Act, 15 U.S.C. § 1125(c).

54.     Plaintiff has been damaged and continues to suffer damages and irreparable harm by the misappropriation and infringement described above in many ways, including but not limited to diversion of prestigious deals, lost licensing revenue, actual consumer confusion, and significant harm to reputation and goodwill, all in amounts not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this Court. Such conduct of Defendants has been willful, wanton, reckless, and with full knowledge of Plaintiff's rights; Plaintiff is therefore entitled to attorney's fees and punitive damages. Defendants will continue such willful and intentional conduct unless enjoined by this Court.

**COUNT III**
**TRADE DRESS INFRINGEMENT UNDER FLORIDA COMMON LAW**
**(Against All Defendants)**

55.     Plaintiff restates and realleges the previous paragraphs as if fully stated herein.

56.     The Britto Trade Dress is used to identify, among many other things, products in the computer and mobile phone accessory category, and services in the retail store category.

57.     Craig & Karl have been illegally misappropriating the Britto Trade Dress and using it to obtain jobs and advance their own careers by illegally trading upon the consumer affection and immeasurable goodwill built by Mr. Britto's decades of tireless work, promotion, and investment.  The misappropriation then continues to suffuse whatever the subsequent project

may be, causing Plaintiff damages and irreparable harm on multiple market levels.

58.     Additionally, the Start Something New campaign was used to advertise and promote products in the computer and mobile phone accessory category, and services in the retail store category.  The Start Something New campaign misappropriates the protectable Britto Trade Dress.

59.     Defendants' unauthorized use of the Britto Trade Dress creates the false and deceptive commercial impression that the Start Something New campaign, and all products and services that the Start Something New Campaign promotes, is associated with, endorsed by, or sponsored by Plaintiff. The Start Something New campaign has caused actual consumer confusion for Plaintiff's consumers at both the business-to-business and retail level.

60.     Defendants' unauthorized use of the Britto Trade Dress has wrongfully appropriated business and goodwill value that rightfully belongs to Plaintiff and that Plaintiff has invested time, money, and energy in developing. This conduct is in violation of Florida common law.

61.     Plaintiff has been damaged and continues to suffer damages and irreparable harm by the misappropriation and infringement described above in many ways, including but not limited to diversion of prestigious deals, lost licensing revenue, actual consumer confusion, and significant harm to reputation and goodwill, all in amounts not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this Court.

62.     Such conduct of Defendants has been willful, wanton, reckless, and with full knowledge of Plaintiff's rights. Defendants will continue such willful and intentional conduct unless enjoined by this Court.

## COUNT IV
## TRADE DRESS DILUTION UNDER FLA. STAT. § 495.151
### (Against All Defendants)

63.     Plaintiff restates and realleges the previous paragraphs as if fully stated herein.

64.     As explained above, Plaintiff's distinctive trade dress is famous throughout the world, and in particular in Florida.  Defendants' unauthorized use of the Britto Trade Dress in the Start Something New campaign has caused and will cause dilution of the distinctive quality of the Britto Trade Dress, and therefore constitutes a trade dress dilution under Fla. Stat. § 495.151.

65.     Plaintiff has been damaged and continues to suffer damages and irreparable harm by the misappropriation and infringement described above in many ways, including but not limited to diversion of prestigious deals, lost licensing revenue, actual consumer confusion, and significant harm to reputation and goodwill, all in amounts not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this Court. Such conduct of Defendants has been willful, wanton, reckless, and with full knowledge of Plaintiff's rights. Defendants will continue such willful and intentional conduct unless enjoined by this Court.

## COUNT V
## UNFAIR COMPETITION UNDER FLORIDA COMMON LAW
### (Against All Defendants)

66.     Plaintiff restates and realleges the previous paragraphs as if fully stated herein.

67.     For the purposes of this Count V, each of the defendants acted as an agent for each of the other defendants in doing the acts or omissions alleged and each defendant ratified and otherwise adopted the acts and statements of the other defendants and was at all times acting within the course and scope of such agency with the knowledge and approval of each of the other defendants so as to make them directly and vicariously liable to Plaintiff for the conduct complained of herein

23

68.     The foregoing acts and conduct of Defendants constitute unfair competition under Florida common law.

69.     Plaintiff has been damaged and continues to suffer damages and irreparable harm by the misappropriation and infringement described above in many ways, including but not limited to diversion of prestigious deals, lost licensing revenue, actual consumer confusion, and significant harm to reputation and goodwill, all in amounts not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this Court. Such conduct of Defendants has been willful, wanton, reckless, and with full knowledge of Plaintiff's rights. Defendants will continue such willful and intentional conduct unless enjoined by this Court.

## COUNT VI
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT, FLA. STAT. § 501.201 *ET SEQ.*
### (Against All Defendants)

70.     Plaintiff restates and realleges the previous paragraphs as if fully stated herein.

71.     The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce. Fla. Stat. § 501.204.

72.     At all relevant times, Defendants advertised, solicited, provided, offered, and/or distributed goods and services, and thereby were engaged in "trade or commerce" as defined by § 501.203(8).

73.     At all relevant times, Britto Central was a "consumer" as defined by § 501.203(7).

74.     Defendants' wrongful acts, as more fully described above, were deceptive and unfair.

75.     As a direct, proximate, and foreseeable result of Defendants' deceptive and unfair acts and practices, Plaintiff has been damaged and continues to suffer damages and irreparable

harm by the misappropriation and infringement described above in many ways, including but not limited to diversion of prestigious deals, lost licensing revenue, actual consumer confusion, and significant harm to reputation and goodwill, all in amounts not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this Court. Such conduct of Defendants has been willful, wanton, reckless, and with full knowledge of Plaintiff's rights. Defendants will continue such willful and intentional conduct unless enjoined by this Court.

## COUNT VII
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501 *ET SEQ.*
### (Against the Craig & Karl Defendants)

76.     Plaintiff restates and realleges the previous paragraphs as if fully stated herein.

77.     Plaintiff is the legal owner of all right, title, and interest to the registered work "Abaperu," U.S. Registration No. VA0001800500.

78.     Plaintiff is the legal owner of all right, title, and interest to the registered work "My Alphabet Playbook," U.S. Registration No. VA0001743328.

79.     Plaintiff is the legal owner of all right, title, and interest to the registered work "Blessings," U.S. Registration No. VA0001948404.

80.     Plaintiff is the legal owner of all right, title, and interest to the registered work "Picasso," U.S. Registration No. VA0001948405.

81.     Plaintiff is the legal owner of all right, title, and interest to the registered work "Gloria and Emilio Estefan," U.S. Registration No. VA1948407.

82.     Plaintiff is the legal owner of all right, title, and interest to the registered work "Peace Love," U.S. Registration No. VA0001948408.

83.     Plaintiff is the legal owner of all right, title, and interest to the registered work "O Alquimista," U.S. Registration No. VA0001948402.

84.     Abaperu, My Alphabet Playbook, Blessings, Picasso, Gloria and Emilio Estefan, Peace Love, and O Alquimista are referred to collectively as the Infringed Works. For reference the following are visual facsimiles of the Infringed Works:

| Abaperu |  |
|---|---|
| My Alphabet Playbook (book) |  |
| Blessings |  |
| Picasso |  |
| Gloria and Emilio Estefan |  |
| Peace Love |  |
| O Alquimista |  |

85.     Craig & Karl have copied, reproduced, distributed, adapted and/or publicly

26

displayed images which infringe upon the Infringed Images without the consent, permission or authority of Plaintiff.

86.    Craig and Karl's conduct constitutes infringement of Plaintiff's copyrights and exclusive rights in violation of sections 106 and 501 of the Copyright Act.

87.    Craig & Karl's acts of infringement have been willful, intentional, purposeful, and in reckless disregard of and with indifference to the rights of Plaintiff.

88.    As a result of Craig & Karl's infringement that began in and stemmed from the United States, Plaintiff has and will continue to suffer damages in the United States and around the world.

89.    As a result of the infringement that began in and stemmed from the United States, Craig & Karl have unlawfully profited in the United States and around the world.

90.    Plaintiff is entitled to statutory damages or actual damages and Craig & Karl's profits related to the infringements both in the United States and around the world, pursuant to 17 U.S.C. § 504.

91.    Craig & Karl will continue to willfully infringe Plaintiff's rights in the Infringed Works unless restrained by the Court. Plaintiff is entitled to injunctive relief prohibiting further infringement, pursuant to 17 U.S.C. § 502.

**WHEREFORE**, Plaintiff prays as follows:

A.    As to Counts I-VI, that the Court enter judgment in favor of Plaintiff against Defendants, jointly and severally, for all damages proximately caused by Defendants, and further award Plaintiff its attorneys' fees and costs incurred in the prosecution of this action.

B.    That the Court find Defendants violated 15 U.S.C. § 1125(a) and grant Plaintiff preliminary and permanent injunctive relief together with damages, pursuant to 15 U.S.C.

27

§ 1117(a), consisting of Defendants' profits, any damages sustained by Plaintiff and the costs of this action; award Plaintiff its attorneys' fees; and in the alternative award damages to Plaintiff in such amount as the Court in its discretion shall find to be just.

C.    That the Court find Defendants violated 15 U.S.C. § 1125(c) and grant Plaintiff preliminary and permanent injunctive relief together with damages, pursuant to 15 U.S.C. § 1117(a), consisting of Defendants' profits, any damages sustained by Plaintiff and the costs of this action; award Plaintiff its attorneys' fees; and in the alternative award damages to Plaintiff in such amount as the Court in its discretion shall find to be just.

D.    That the Court find in favor of Plaintiff and against Defendants on Plaintiff's common law claims for trade infringement and unfair competition, and award Plaintiff all damages proximately caused by Defendants.

E.    That the Court find Defendants violated Fla. Stat. § 495.151 and grant Plaintiff preliminary and permanent injunctive relief together with damages, pursuant to Fla. Stat. §§ 495.141 and 495.151(2), consisting of Defendants' profits, any damages sustained by Plaintiff and the costs of this action; award Plaintiff its attorneys' fees; and in the alternative award damages to Plaintiff in such amount as the Court in its discretion shall find to be just.

F.    That the Court find Defendants violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.204, and grant Plaintiff damages proximately caused by Defendants; attorneys' fees, costs, and interest, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105; and a declaratory judgment that Defendants violated FDUTPA and an injunction enjoining future violations of FDUTPA by Defendants, pursuant to Fla. Stat. § 501.211(1).

G.    That the Court find the Craig & Karl Defendants violated 17 U.S.C. §§ 106 and 501 and enter an injunction enjoining future violations of the U.S. Copyright Act by the Craig &

Karl Defendants, pursuant to 17 U.S.C. § 502, and statutory damages or actual damages and Craig & Karl Defendants' profits related to the infringements both in the United States and around the world, pursuant to 17 U.S.C. § 504.

      H.     Pre and post-judgment interest according to law.

      I.     Such other and further relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable as of right by jury.

Dated: April 6, 2015

                              Robert Zarco (Fla. Bar. No. 502138)
                              Robert M. Einhorn (Fla. Bar. No. 858188)
                              Kaari Gagnon (Fla. Bar No. 046106)
                              Gabriel Estadella (Fla. Bar No. 32094)
                              ZARCO EINHORN SALKOWKI & BRITO, PA
                              100 SE 2nd Street, Suite 2700
                              Miami, Florida 33131
                              Telephone: (305) 374-5418
                              Facsimile: (305) 374-5428

                              **AND**

                              Mikhael Ann Bortz (Fla. Bar No. 33285)
                              BORTZ LAW FIRM, PA
                              66 West Flagler Street, Suite 1206
                              Miami, Florida 33130
                              Telephone: (305) 684-8956

                              *Attorneys for Plaintiff*